Good morning, please be seated. I'd be happy to hear argument in Colon Health Centers. Good morning, Your Honors. May it please the Court, Darpana Sheth on behalf of Colon Health Centers and Progressive Radiology. The undisputed evidence in this case shows that one specific aspect of Virginia's Certificate of Need program, its application to medical imaging devices, has created a wall that has kept at least $99 million worth of imaging devices from entering Virginia's borders. And Virginia does so without achieving any benefits, other than to protect in-state service providers from competition. This kind of economic protectionism violates the Dormant Commerce Clause in two independent ways. First, it unduly burdens interstate commerce in imaging devices and therefore fails the pike balancing test. Second, it discriminates against manufacturers of these devices and therefore fails strict scrutiny. Now the government's brief focuses on a third argument in which there are a tremendous amount of factual disputes concerning whether the application process discriminates against out-of-state applicants. But this Court does not need to reach that issue because plaintiffs are entitled to summary judgment based on the undisputed facts, showing both a burden on and discrimination against interstate commerce in imaging devices. Turning to the undue burden under PIKE, Virginia's requirement is particularly anti-competitive, as this Court recognized in the previous appeal. Virginia is one of only three states that imposes the full burdens of its Certificate of Need program on medical imaging devices, no matter how much that device costs. And Yamaha and Medigen teach us that that unusualness is directly relevant to assessing both the benefits and burdens under PIKE. Let me just ask you, you start out with the PIKE burden on it, and I'm just thinking in terms of maybe the way I looked at it, normally I'd start out dealing with the discrimination aspect of it. That didn't work, didn't look at the PIKE. But I'm trying to understand the order in which you... Sure, I'm happy to discuss the discrimination. I'm not going to do it the way you want to do it. I just want to know, does that... It would seem to me that PIKE doesn't come up unless you... If you dealt with discrimination, if that doesn't happen, you don't go to PIKE. Or is that not correct? No, that's correct, Your Honor, but I think there's two different arguments for termination. One is discrimination against the interstate manufacturers, and then the second is discrimination in the application process against out-of-state applicants, essentially. So under the discrimination against imaging manufacturers, the argument is that the certificate of need requirement is effectively bottling up health care spending on medical imaging so that more dollars are being spent in-state on providers using devices that they already own. Is that that $99 million you're talking about? No, that's the money that is spent on in-state providers of medical imaging services, and less money is being spent on the new devices manufactured out-of-state, and 100% of those are out-of-state. But the $99 million is what comes in under both the discrimination but also more relevantly the burden. Here there's an undisputed burden. In Virginia they bought $99 million less in imaging devices than they would have purchased. That's correct, Your Honor, and that's undisputed. And that necessarily saved the health care patients $99 million. I'm sorry, Your Honor. That reduced the cost of medical services in Virginia by $99 million, but somebody had to recover that, they had to spend it, they had to charge it right back to the health care providers, or to the insurance companies and the patients, $99 million. So it looks to me like that cuts both ways. Well, no, Your Honor, there's no evidence that- One of the purposes of this was to cut costs. One of the purposes of this is to cut costs, and you're saying they did cut costs by $99 million under your evidence. No, that's just cutting the cost of the $99 million that's being kept out. It doesn't show when there's no evidence in the record. $99 million of Virginia money was not spent on imaging devices. But it could have been. It would have been spent on imaging devices. And it was spent in other ways. You're an expert. They cut the cost by $99 million. But there's no evidence. That's even more than they claim, I think. But there's no evidence. So it necessarily reduced the cost of medical services in Virginia by $99 million at least. Maybe there's a markup in there somewhere. Yeah, exactly, Your Honor. There's nothing in the record that says that that $99 million actually resulted in savings to the consumer. In fact, other- Well, it had resulted in savings to the consumer because the providers in Virginia spent $99 million less. No, Your Honor. There are no manufacturers in Virginia. There are no manufacturers of these devices in Virginia. If they bought them, they had to buy them out of state. And so if they didn't buy them at all, they spent $99 million less. It's $99 million that they didn't charge back, hopefully didn't charge back to the patients. And that's what we don't know, Your Honor. I think under the record there's no evidence that that savings actually transferred to the patients. Other imaging providers now in state- Well, but this is- Judge King's question raises a good point. We say, well, there are disputed issues of fact and this and that. But, you know, I wanted- I think my colleague wanted in the earlier appeal to make sure you got a fair hearing on this because it could have any competitive effect. So we wanted to make sure you had your fair shot. Now then, it gets to the point now where I'm concerned about being turned into a healthcare policymaker. And with 36 states, we have some of those states weighing in with amicus briefs, and you have 36 states having a certificate of need feature to their programs here. I know you think, well, Virginia has a variation. They're all varied, I understand that, but there's still 36 states that have it. And I just don't know how much China I'm knocking down with this because, you know, the provision of healthcare is a very complicated business. I mean, we all understood that following the litigation up to the Supreme Court on the two healthcare cases that came before. But this is really complicated stuff. And I'm just wondering, for example, whether this is the right forum to resolve those. And let me just- I know you're jumping to get happy at the end of the time. But the Commonwealth advances these interests, and it says that there really is a link between- and there's a lot of studies to support this, and I think a lot of the other states would also say this is correct- that there's a link between quality and quantity, and that if you underutilize medical facilities, then the technicians whose expertise the public counts on would not have the familiarity and the experience that they need in both administering the test and in interpreting results. And then the point made, and this is certainly the case in Virginia, is we have very few public hospitals. There's Virginia Commonwealth University and the Medical Center there in Richmond, and then there's the University of Virginia, as you well know. There's relatively few public hospitals in this state, just two. And so you have to have private health care providers taking up the slack. And so what the Virginia program has tried to do is to say, you know, of care to the indigent to supplement the efforts of the public hospitals. And it's sort of a holistic review of health care. Now maybe the Virginia legislature's right, maybe it's wrong, but they're very complicated questions for medical professionals, and I just worry about a court barging in too aggressively and upending a system which Judge King says, and I think with some force, may save Virginia's consumers a good bit of money, may help provide indigents health care, and may actually improve the quality of health care by increasing the experience of the technicians who administer these tests. And maybe they're right, maybe they're wrong, but sometimes it's best to know what you don't know, and I'm afraid of getting a little bit out of my depth. Sure, Your Honor, let me address those issues. I appreciate your patience. Oh, no, not at all. I'm happy. And letting me run on, but you've been very patient with me, and I thank you. But I just wanted to tell you how serious my concern about this is. And let me try to alleviate those concerns. So there are three responses. First, it's important that it's not just different aspects, that all 36 states have certificate of need laws. The challenge here is limited to Virginia's specific decision, unusual decision, to require medical imaging devices to be subject to. But there are a number of other states that have weighed in with an amicus brief, saying this would threaten our systems, encouraging us to uphold the Virginia program. And it's worth noting that none of those states that submitted the amicus have the same requirement that Virginia's requirement does with respect to medical imaging, that's regardless of capital costs. Only three states have that requirement. And as this court recognized in Yamaha, it rejected the argument that we should look at the benefits generated by other provisions of the law rather than the specific provision being challenged. So it may well be that certificate of need programs in general and other aspects, for example, for the hospitals, does convey a lot of benefit. But that's not the question before this court. And the evidence here shows that there is absolutely... The question before this court is whether we're going to declare a Virginia statute unconstitutional. Well, a specific provision of the statute. So you're asking us to second-guess the Virginia legislature in the context of a statute that they said and they adopted to do the things, three specific things, and others that Judge Wilkinson enumerated for you. That's a big step for three unelected judges to sit up here and second-guess a legislature of one of the 50 states on a major thing such as health care provisions. Well, it's important to note that... That's what you're asking us to do. That's what this pipe test asks us to do. I mean, you're arguing that and there's been some criticism of it on the grounds that it encourages what some call judicial activism by second-guessing legislative bodies. Well, with all due respect, I think that this court has struck down two previous laws, at least twice, using the pike analysis, and it's important to note... You're talking about the Yamaha case. Yamaha. There's a motorcycle case out there in the western part of the state where they let the dealership out there object if they wanted to put a dealership anywhere else in the state. And as well as in Medigen, which involved public health safety. Judge Michael was very careful in his analysis of that. That's hard to say that that has much to do with this. And it's important to note that here Virginia has conceded that it has no evidence of three different things. It's conceded that it has no evidence that requiring a certificate of need for imaging has any benefits. Judge Wilkinson, you mentioned the link between quality and improvement, and that might be true of other aspects of Virginia's certificate of need program, but on this record there's no evidence that ensures that the doctors actually read more scans because the certificate of need requirement relates to who owns the devices, not who performs the scans. But at some point these factual questions in a case like this become policy determinations. It's a judgment call as to whether the certificate of need program avoids the underutilization of the machines and contributes to expertise on the part of those health care professionals administering them. I mean, we can get into the weeds on this, and we can debate this fact and that fact and the rest of it, but that carries us farther and farther into the role of a policymaker, does it not? No, Your Honor. I think as this Court recognized in the previous appeal, what matters is is there any basis in the facts, in the evidence, in the record before this case to believe that those benefits are being achieved. We can't have speculative benefits. I mean, there were sort of dueling experts below, and I thought the District Court credited one of those. On the issue of discrimination in the application process, but Virginia's expert emphatically did not offer any expert testimony as to the benefits of the certificate of need program. And so on that issue, the benefits- Right. On the discrimination point, the State's expert was credited, but on the Pike point, hasn't the Supreme Court across the spectrum been told us to be very cautious about Pike balancing and to use what was in essence a rational basis test to the legislature's assessment of relative benefits and burdens? I mean, we've been sent an amber light on this, and I'm just worried if we start striking these things down, they're going to be cert-granted stamped all over. Well, I think there's a difference when there are- if there's any evidence in the record of benefits to requiring a certificate of need for medical imaging, then yes, it becomes a factual issue, and maybe that's where Judge King and you are concerned. But on this record, there is no evidence of that specific provision requiring benefits. But turning to discrimination, if that offers a way that you'd be more comfortable with, there's discrimination against the imaging manufacturers. Virginia's goal here is to restrict the number of imaging providers to ensure, as this Court recognized, the profitability of devices that they already own. And the way Virginia accomplishes this goal is by making it harder to import new devices and then redirecting that investment in those devices to in-state providers, and that is discrimination. It's a discriminatory effect. Well, there are no manufacturers in Virginia, according to this record. And that's correct, Your Honor, but that only goes to the fact- They could come in here and build a plant if they wanted to, I suppose. Right, and as this Court recognized in Yamaha, that only goes to the fact that there's no facial discrimination. But your discrimination goes back to the fact that $99 million, according to your expert, Virginia consumers don't have to pay. Our expert did not testify that those- We say $99 million taken out of the manufacturing sales from out-of-state that would have come into Virginia. They didn't buy the stuff. And therefore it leads to higher prices. That's $99 million not in the health care system to be charged back to the consumers. It makes it more difficult, doesn't it, to prove discrimination in favor of in-state businesses when there are no in-state businesses to discriminate in favor of? The in-state businesses being discriminated in favor of are the medical imaging service providers. Here, we're essentially competing- They make the point that that's a question of incumbency, and some of those providers may be out-of-state businesses. So the Supreme Court has made clear in Bacchus that all you need for discrimination is some competition between an out-of-state interest and an in-state interest. Here, the out-of-state interest is the imaging manufacturers. What about the district court's finding here that the CON approval rate was actually the same for Virginia and non-Virginia entities? He makes it specifically. He says, well, I think it was something like 85% of Virginia and non-Virginia entities that had the certificate of need approved. Then the review process went from 154 to 167 days for both Virginia and non-Virginia entities. There's a factual dispute as to that issue. Therefore, this district court erred in granting summary judgment when there are competing experts talking about the discrimination in the application process, whether the process favors in-state applicants over out-of-state applicants. Aren't these Commerce Clause questions generally resolved as a matter of law? No, Your Honor. As this court recognized earlier on the appeal, what matters is facts, and there has to be facts in the record. Here, the facts as to whether the application process discriminates are disputed. But there are no factual disputes about whether the certificate of need program, as applied to medical imaging, discriminates against imaging manufacturers. Essentially, we're competing over the same health care dollars, where more dollars are being spent on in-state imaging providers and less dollars are being spent on out-of-state imaging manufacturers. The fact that there are no imaging manufacturers in Virginia is simply not relevant. There were no motorcycle manufacturers in Yamaha, yet this court proceeded to analyze whether there was discrimination. I'm not saying it's dispositive by itself. I just think the fact that there are no in-state businesses to discriminate in favor of makes it more difficult. It's the in-state businesses that are being favored are the in-state imaging service providers, and they are in competition with the manufacturers, as Virginia does not dispute. But what about the incumbency point? Aren't many of the in-state service providers actually out-of-state companies? And that goes to whether there's discrimination in the application process. So there's two different ways in which this statute discriminates against out-of-state interests. One is against the imaging manufacturers, the device manufacturers, and one is against the out-of-state applicants, if you will. And those applicants on that issue, there is a factual, they were dueling expert testimony. The government expert completely ignored this court's earlier ruling in determining how do you determine an in-state versus out-of-state entity, and only looked at state of incorporation. The plaintiff expert used incumbency. That's one factor, isn't it? That's one factor, that's correct, but that was the sole factor that the government's expert used, which didn't make sense, because as this court recognized, you can have a Virginia hospital that is owned by Virginia or that provides services in Virginia, but is incorporated in Delaware. And that's the only out-of-state connection that is incorporated in Delaware, and that's not enough to make that simply an out-of-state interest. It's already providing services in Virginia. It has a certificate of need. But here there's no dispute that Virginia is discriminating against the manufacturers. There is competition between the manufacturers and the in-state service providers. In fact, that's exactly how the regulation works. Its express purpose is to reduce the supply of devices so that in-state imaging service providers can face less competition, and that's clear from the regulations of the statute. Let me ask you a question, at least so I can understand how you synthesize this. How do you contend that the existing medical providers in Virginia, who you say have benefited under this law, how are they in competition with the medical device manufacturers, 100% of whom are out-of-state of Virginia? Here I think the regulations make that clear. In fact, I could point you to the Regulation 12, Virginia Code 5-230-110, and the corresponding Regulation 150. So no CT scanner is going to be improved unless a certain minimum number of scans are met. But more importantly, unless that new CT, the introduction of the new CT would not reduce the utilization of existing services. And there's the same provision for MRI services. And it's important to note here that Virginia does not dispute that. There's no dispute that there is competition between the two. Virginia's only argument here on the discrimination angle for imaging manufacturers is to point to pharmaceutical manufacturers versus Walsh. But in that case, it's distinguishable because there was no competition. The pharmaceutical manufacturers conceded there was no competition. But if the time of approval is the same and the percentage of approvals is the same, where is the discrimination? So with respect, Your Honor, that's a factual question as to whether the approvals are the same. Plainness experts found that they were not the same. Right, but the district court, I assume, listened to both experts or considered the opinions of both experts. And the district court, I realize it's on summary judgment, but the district court still heard both experts. And it did credit the Commonwealth's experts. And that's improper on summary judgment. I think you need to... Well, but what we're dealing with is a, you know, it was an evidentiary hearing, and this is... Respect to Your Honor, it was not an evidentiary hearing. Well, the experts appeared before the district court. No, Your Honor, it was all on summary judgment. Okay. So there was no evidentiary hearing. Everything was like that. Right, right. Y'all really didn't do any real fact discovery. You submitted a bunch of stuff with paperwork and news articles and studies and stuff, and then competing experts. And that's why, since it wasn't an evidentiary hearing... Well, it was sort of like a trial to the court. Not a trial to the court, Your Honor. There were no credit... Well, it was sort of like a trial to the court. Everybody agreed to it. And we were arguing about whose expert was more reliable and which wasn't looking at it right and all this. But the one thing, you know, you keep relying on this $99 million, and that seems to me that supports what the legislature did. Well... And you say that discrimination is not disputed. They sort of say it is. They say it is. And their argument for why it's... There is no... They say it's not disputed that there isn't any. That's what they'd say. It's not disputed that there was, so there's a big dispute. There's no dispute that there's competition, Your Honor, but there is dispute, and the only argument Virginia makes about discrimination is pointing to Walsh. But there you had out-of-state drug manufacturers with the in-state retail pharmacies, and the plaintiffs there conceded there was no competition between the two. Here, there is competition between the two, and as Baucus instructs, that's all that's needed. A competition between the out-of-state interests here, the imaging device manufacturers, all of whom are out-of-state, and the in-state service providers, all of whom are in-state, as this court recognized in the prior appeal, and there's that redirection of commerce from those out-of-state interests to the in-state interests. Turning to the application process, though... Thank you. I apologize for taking too much of your time. We've tried to give you some extra time... Sure. ...as a result, and you also have some time for rebuttal. Okay, thank you, Your Honor. Thank you. Mr. Raphael. Good morning. May it please the Court, Stuart Raphael for the Commonwealth Appellees. The District Court correctly rejected the Plaintiff's Dormant Commerce Clause challenge under both the discrimination test and the Pike test. On the discrimination test, it was undisputed that Virginia's COPN program does not discriminate against out-of-state medical providers. There was a huge amount of discovery. Both sides spent a lot of time and a lot of money on this. I took the plaintiff's expert's deposition, Chris Conover, towards the end of the discovery period... What do you do in summary judgment proceedings when all everybody has is a bunch of experts? Well, but there was no conflict... In summary judgment, you first look at the facts in light, which were able to the non-moving party or something. But there are some legal principles that experts don't even come into play. And then you all get the experts. The case is straddled. It's all experts. It just looks to me like it's a trial to the court. There was no conflict in the testimony of the experts on the relevant... Well, she got up here and just said, it's undisputed that there was discrimination. And I'd like to show... And then you get up here and say, it's undisputed there's no discrimination. Let me show you why she's wrong. Well, we're not. If you take a look, Your Honor, at page 517 of the Joint Appendix, it's the last page of Volume 1. I took their expert's deposition. I said to him, question, are you aware of any evidence that Virginia is purposefully discriminating against out-of-state entities in its COPN process? Answer, I'm not familiar with such evidence. At the bottom of that page, I ask him the same question for discriminatory impact, same answer. This is Dr. Conover you talked about. Conover, that's correct. In addition to that, that admission by their expert, we served Rule 36 request for admission on the plaintiffs at the close of discovery. And they admitted, and this is pages 715 and 723 of the Joint Appendix, they admitted they had deduced no evidence that Virginia's COPN process discriminates against out-of-state medical providers of goods or services. That is dispositive. It's their burden of proof on discrimination. They had no evidence. So when she says the contrary, she's just dead wrong. She's dead wrong, and what she's relying on for her argument is the incumbency argument. Conover did an incumbency analysis. He said, well, I find that if you had a COPN. The experts did different types of analysis. They would all pass one another, too. Well, that's true, but the issue here is discrimination against out-of-state entrants. All their experts said was if you have one COPN, you're more likely to get another one. And we said even if that's true, which it's not, even if it's true, so what? It doesn't prove discrimination against out-of-state entrants. The court probably listened to the oral argument the last time the case was here. The entire discussion was. . . I heard the oral argument. I know you did. The entire discussion was, you know, we don't know if there's discrimination against out-of-state entrants or not. We need to send it back for discovery, and that's what you did. We didn't need any more evidence in light of their admissions, but we hired an expert from the Georgetown Business School, a nationally renowned economist, John Mayo, and he did a regression analysis of all of the applications for the past 15 years. And the key table of his findings at page 166 of the joint appendix, he found that the COPN approval rate is the same whether you're an in-state or out-of-state company, that there's no statistically significant difference in the amount of time it takes to get an application granted. It's about 160 days. And that the incidence of good cause petitions being filed, this is their argument that, you know, that that's less than 3% and the rate is the same for both in-state and out-of-state companies. But you took the summary judgment and relied on your expert, and they say that for purposes of summary judgment, the judge couldn't look at your expert, they had to look at their expert. Because the way summary judgments work, you have to take the non-moving party. You're the prevailing party, you have to take the non-moving party experts. That's right. So how do you get around that basic summary judgment principle? Because there was no conflict. We can affirm your judgment. Judge King, there was no conflict on the question of whether there's discrimination. They admitted. I just read you the admissions. They admitted. Your expert, they say you can't rely on your expert. You've got to rely on their expert. Their only critique. We have to say their expert's wrong on this incumbency. No, you don't. Because even if you credit their expert, all he said is that if you have one COPN. Well, for summary judgment, are we supposed to credit their expert? If we're going to look at expert testimony at all. You are. We have to look at theirs. You are. And my point is if you. On your motion. Yes. But not on yours. So you can't get up here and argue with Dr. Mayo or whatever he was. He's your expert. And credit. Your Honor. And you're the moving party. We have to look at theirs. If I could answer your question. You credit their expert, but all their expert said was that if you have one COPN, you're more likely to get another one. We credit their expert and you win. Absolutely. That's what you have to argue. That's exactly right. That's right. So you're up here arguing that we need to look at your expert. You can't argue that. You've got to argue that their expert gives you a right to win. You're right. It's their burden to prove discrimination. I showed you the admissions that they couldn't. They have no evidence of discrimination. That's the end of the case, even if we had evidence. The point you're making is that their expert made your case. Yes. And because their expert talked in terms of incumbency, and if you expand the REACH Commerce Clause analysis to take it away from its basic warrings of in-state versus out-of-state and start talking about incumbency, we're off riding on the wide prairie. Yes. It'll just open it up indefinitely. So I think Judge King is right. Your argument has to be not only that it can't just be we should credit your expert. The argument I thought you were making was that their expert actually reinforced your case by arguing the case in the wrong terms. That's exactly right. Their expert admitted there was no discrimination against out-of-state firms. His focus is on incumbency. And the fact that an out-of-state firm can come in and be a successful incumbent, that proves there's no Commerce Clause violation. Right? Out-of-state entrants do just fine in Virginia. That's the point. So you're exactly right. To the district court's consideration of the two experts, he didn't really say, well, that Dr. Kahneman would, even if he's correct or whatever. He says if both, even if both of them are correct in their analysis, what he says is Dr. Mayo's conclusions were legally relevant. And he based that upon the fact that he said they used different numbers in their underlying analysis in the consideration of which corporation, which group is out-of-state and what's in-state. And when they used those different numbers in that underlying basis, he determined that the method used by Dr. Mayo was the more legally relevant one to use, which doesn't really support. I mean, even Dr. Kahneman went to a different conclusion. It didn't matter if it wasn't legally relevant. So I'm, you know. Right. If I could answer. I think it's a different analysis if you look at it in the pure sense of summary judgment. So, no, this doesn't work if you take everything he says is true. And the question is, do we have to take it as true that the basis that was used for the analysis was correct? Or do we get to look at the underlying basis for the expert's opinion? You see where I'm going with this? I do. There's a limit in taking something that's true. You don't have to take something that's true that's not legally relevant. That's correct. That's the problem and the difficulty in this analysis is there's a legal relevance determination by the district court, and it's based upon a determination that, hey, what you used here to say owners, basically, by department numbers is that sort of thing, and they do that on a discretionary basis, or whether this corporation had something, had another designation, could be in Delaware and Virginia. Well, it was in our state. It was in Delaware. And that was your expert that used that. So, I mean, isn't that really the difference here? Well, Your Honor, the fundamental question is, does the district court get it right in concluding that the plaintiffs had no evidence of discrimination against out-of-state entrants? And he did get it right. It was their burden to prove discrimination. Where's the evidence of interstate discrimination against out-of-state entrants? Their expert admitted that he had no evidence. If you credit 100% his study and you ignore Mayo, all he said was that incumbents are more likely to get an additional COPN. I think that's the point. The district court made a ruling on the legal relevance of their expert's conclusion. But that's not illegitimate. No, it's not. It's not. I mean, that's the thing. It's not. And these were cross motions, right? The point, as I thought, was that it's not a question of crediting one. It's the fact that one analysis didn't go to the question of discrimination vis-a-vis in-state versus out-of-state companies. The analysis went to incumbency. And when you took the legally relevant factor, which was whether out-of-state concerns were discriminated against, either in the quantity that was improved or in the percentage that was improved or in the length of time it took to act on the application, there wasn't any discrimination there. That's exactly right. If we start looking at every law that provides some incidental benefit to incumbency versus non-incumbency, there's no end to that. And that's where their expert was driving. That's exactly right. And I think that this case is really a far cry from the case they rely on, which is Walgreens versus Rulon, which is the Puerto Rico case, where they had a COPN law that basically protected in-state Puerto Rican pharmacies, and they grandfathered in-state pharmacies, 92% of which were locally owned. The law was discriminatorily applied. But of course here we don't have any in-state. There's no in-state manufacturing. Manufacturing is a different issue, and I'll get to that in a second. But there's nothing like the kind of discrimination in Rulon. Let me ask again the broader question. You have a number of states submitting amicus briefs here, and the point is made that 36 states have a certificate of need program. Is Virginia's CON program rather typical of those 36 states, or is it an outlier? No, I think it is typical. The plaintiffs have said only two other states have a review of scanners without any dollar limit, but that really misstates it. Here are the numbers. Of the five states that filed the amicus brief, three of them regulate scanners. That's page 551 of the joint appendix. On MRI machines, it's true that only two other states, like Virginia, have no dollar threshold, but that ignores that nine other states, plus D.C., have dollar thresholds that would cover the machines that issue. In this case, that's at page 8 of our brief. And for CT scanners, which cost about $750,000, seven other states, in addition to Virginia, would regulate the kind that issue here. Is the program tailored to some extent by the composition of the health care industry? Absolutely. One of the values of a federal system is where a fundamental right, a constitutional right is not involved, the states have some latitude in tailoring a program to their specific circumstances. That's absolutely correct. We only have two public hospitals in this state, and they are overburdened. That's exactly right, Your Honor. Your Honor alluded earlier to the Affordable Care Act, and there's this dispute about whether Virginia should expand Medicaid or not, but the fact that it hasn't means that hospitals really need the income. I mean, those hospitals, you can visit them. They are trying to provide indigent medical care. And they have to. But they can't do it. That's exactly right, Your Honor. I want to address the point about the fallback argument on discrimination. None of the things the plaintiffs alleged originally they were able to prove, they couldn't prove discrimination against out-of-state medical providers or terrible delay or blocking of competition, none of that they could prove. So they fall back on the argument that there are no in-state manufacturers of CT machines or MRI machines. That's totally irrelevant, as Judge Wilkinson recognized. And let me cite three cases. But there's no challenge to the fact that as a condition of receiving a certificate of need, that the provider helped take up the slack and provide for indigent medical services. There's no challenge to that condition. If Your Honor is saying that they recognize that that's a benefit, then that is dispositive on the pike balance. That is clearly a benefit of the COPN system. The three cases I wanted to mention on the manufacture point, American Motors, no Jeeps were manufactured in Virginia either. Ms. Seth mentioned the Walsh case. There were no main manufacturers of pharmaceuticals. Exxon Corporation versus Maryland, there were no Maryland in-state refiners. And yet the fact that there weren't any in-state companies was irrelevant to the discrimination test. There's no discrimination. And it doesn't help you to move to Virginia to manufacture CT scanners in terms of the COPN process. You have to get one either way. Let me turn to the pike balancing test. On this one, they have to prove that the burden on interstate commerce is clearly excessive. You say also that pike balancing shouldn't even apply here, though, because of the Davis case. That's right. And because it is the state trying to protect the health of the public. That's right. And I think Justice Scalia had a really nice metaphor in his concurrence in the Davis case where he said, you know, trying to apply this test is like trying to decide are three apples better than six tangerines, right? You're balancing the reduction in CT scanner sales into Virginia against the quality of medical care. How do you do that? And to your point, Judge Wilkinson, that's classically a legislative decision to make. That's at the heart of the state police power. But if the Supreme Court gets the idea that under the sheets we're doing pike balancing and, you know, we're saying we're really under the table doing pike balancing, that's going to be the end of our analysis. You're right. Because some of the justices do not like the fact that it's standardless. Right. And others don't like the idea of interfering with delivery of significant public services by striking these kinds of things. That's right. And so you just don't know where the votes are. Right. And you apply a rational basis test, particularly when there's no discrimination against out-of-state entrance, and deference is strongest when, in a case like this, the state has health and safety concerns. I think the big problem with the plaintiff's approach on pike is that there's no requirement for empirical proof. They want to litigate to an economic certainty whether there are benefits or not to COPN. But that's not what you do in a dormant commerce clause case. If there's a dispute over the benefits, the state wins. The whole point is that it has to have a reasonable rational basis, not that it's right, as Your Honor said, but that it has a rational basis. And the two best examples for that are this Court's decision in the Brown case, which upheld Maryland's ban on corporate ownership of funeral homes. The rational basis that Maryland gave there was that that improved familiarity between an owner and his business and protected against unfair business dealing. Maryland didn't have to come in with studies proving that. They just said it. Here, we went way beyond that. We have studies. We have admissions by. The Supreme Court's made this point in the rational basis test analysis frequently, that rational basis does not draw the courts into deciding which empirical study is correct. That's exactly right. On the three benefits that we argued at trial, we had lots of evidence of, the plaintiffs keep saying there's no evidence of benefit. That's just not right. There's lots of it. We cited it in our brief on quality, the quality-quantity relationship. Our corporate designee explained that the relationship between quantity and quality was a very important thing underlying the program. The former health commissioner said so at page 174 of the joint appendix. The current one did so at page 193 of the joint appendix. The plaintiff's own expert admitted that this relationship is well-recognized in the medical industry. The plaintiffs themselves, when we took their depositions, they admitted the more CT scans you do and read or MRI scans, the better you get at it. There's clearly a quality-quantity benefit. Ms. Seth attacked the threshold for getting a new CT or MRI scanner. Absolutely, you justify the need for a new one when the existing ones are overused or used more than a particular threshold. For CT scanners, it's 7,400 per unit. That's a lot, but often they do as many as 10,000. The plaintiff's scanner was going to do about 2,400. Is that an annual number? Yes, it is. The commissioner of health and the hearing officer found that the benefits of the colon health program were totally specious, and it would actually result in excess costs. So to your point, Judge King, about we saved $99 million in unnecessary equipment. That's exactly right, and that's what the point of the program is. So their lost $99 million sale is actually a benefit of the program, exactly for the reason you said. In the three years that Virginia was deregulated, we had more scanners in Virginia than all of Canada. That's in the record. So the whole point of this program is to make sure that there's not an overinvestment and an investment in machines that would actually hurt other facilities by skimming the cream off where they need that to cross-subsidize their money-losing operations like burn units and NICUs. On the cost point, the plaintiff's own expert did a study which concluded that having a stricter COPN system would actually save acute health care spending by 5%, and he admitted at page 425 of the joint appendix that it's a policymaker's choice whether to have a COPN system or not. That is a fatal admission. It admits the putative benefits of the system. No empirical evidence is required. This case compared to others is really remarkable because of the extent of the evidence of empirical benefit. We shouldn't have been required to do that. Your Honor, Judge Wilkinson, you said at the oral argument the last time, no one's expecting Virginia to have to come in and prove the empirical benefit. That's exactly what they argued we should have done. We did, but we shouldn't have had to. With regard to the point about the Davis test, we think that Pike has been superseded by Davis and by the discrimination test. You don't need to hold that in order for the state to prevail. I think we win under both the discrimination test or under Pike. You sent this case back for development of the record on the discrimination test. The plaintiffs wholly failed to prove the discrimination that they alleged in the complaint. They're now trying to use the Dormant Commerce Clause as a requirement for laissez-faire economics. That harkens back to Lochner v. New York and should be rejected. The judgment should be affirmed. Ms. Shathrood, pleased to hear from you. Thank you, Your Honors. Just two quick points in rebuttal. First, I'd like to clarify that Davis does not articulate a broad traditional government exception to Pike. The Supreme Court made clear that Davis talks about a narrow exception where the state is favoring itself as a market participant in the economy over out-of-state entities, like their Kentucky-issuing bonds. Here, Virginia is acting like a regulator, not a participant in the market, and therefore Pike does apply, as this Court recognized the last time on appeal. To be sure, it's a deferential test, but it does apply. Secondly, I'd like to correct what my colleague- You don't think Davis renders the Pike analysis unnecessary? No, Your Honor. If the Supreme Court intended to overrule Pike or somehow undermine it, I think it would have said so expressly. Davis was very clear that it was limited to cases in which the state is acting as a market participant. Here, Virginia is simply not acting as a market participant in the provision of medical imaging services or the manufacturing of medical imaging devices. To get to the discrimination aspect, I'd like to correct- As a major interest in public health, it may not have been present in cases like the Yamaha case. But it was present, for example, in Medigen. And Medigen makes clear that the state can't just speculate about putative health benefits, like in Medigen involving medical waste transportation. There needs to be some basis in the record to believe that those benefits are being achieved. Hold on. Doesn't that run squarely into the point that we can't have resolved this case so much on the basis of dueling empirical studies about health care benefits? Because the Pike case and other cases implying Pike said, where you're talking about the state's police power in the sense of the provision of health care services to its citizens, that the courts aren't to judge the empirical soundness of that kind of thing or should be cautious about doing it. That's correct, Your Honor. However, here it's important to note that there's no evidence in the record of any benefits to requiring a certificate in need for medical imaging. The benefits that my colleague points to all pertain to hospitals or NICU units or anything else. There's no evidence about benefits for requiring a certificate in need for medical imaging. But regarding the discrimination point, as this court recognized, what Plano's expert admitted to was that there was no evidence of discrimination against out-of-state entities if you define out-of-state entities solely by state of incorporation. And that was an analysis that this court rejected the last time on appeal. And I direct the court to pages 75 and pages 76 of the joint appendix. The court made clear that current medical providers are, by definition, in-state. So it doesn't matter if you're incorporated outside of Virginia. You're providing medical services. You are in-state. And that's at joint appendix 75. And moreover, Judge King, you recognize that companies that are domesticated have a leg up on others by submitting competing applications, strategically submitting competing applications that could trigger this informal fact-finding conference, which is essentially like a full-blown litigation. And moreover, they're given a structural edge, as this court recognized at joint appendix 76. So the factual issue is whether you define an in-state entity by incumbency, which this court seemed to suggest it should, and then whether you give more deference to that versus defining in-state entities solely by state of incorporation. And there are two different ways to do it. Thank you, Your Honor. We appreciate your argument very much. And we'll come down and we thank you both. We'll come down and re-counsel and move into our next case.
judges: J. Harvie Wilkinson III, Robert B. King, James A. Wynn, Jr.